Filed 3/1/21  In re R.M. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re R.M., a person Coming Under the Juvenile Court Law. | B308812 (Los Angeles County Super. Ct. No. 19LJJP00474B) |
| NICOLE L.,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>Respondent;<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Real Party in Interest. | |

ORIGINAL PROCEEDING. Petition for extraordinary writ. (Cal. Rules of Court, rule 8.456.) Michael Kelley, Judge. Petition denied.

Los Angeles Dependency Lawyers, Law Office of Amy Einstein, Dominika Campbell, and Kelsey Moon for Petitioner.

No appearance for Respondent.

Office of the County Counsel, Rodrigo Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Kimberly Roura, Senior Deputy County Counsel for Real Party in Interest.

\* \* \* \* \* \*

A mother petitions for extraordinary relief pursuant to California Rules of Court, rule 8.452. Specifically, she seeks review of the juvenile court's order setting a permanency planning hearing under Welfare and Institutions Code section 366.26[1] and the juvenile court's finding implied in that order that the Indian Child Welfare Act (*id.* at § 224 et seq.; 25 U.S.C. § 1901 et seq.) (ICWA) does not apply. Because substantial evidence supports the court's finding, we deny the petition and dissolve the stay of the permanency planning hearing.

**FACTS AND PROCEDURAL HISTORY**

Renesmee M. is the daughter of Nicole L. (mother). She was born in July 2020. Mother has a history of using methamphetamines and amphetamines, including during her pregnancy with Renesmee as indicated by positive tests for those substances a few days before Renesmee was born and on the day she was born.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

On August 4, 2020, the Los Angeles County Department of Children and Family Services (the Department) filed a petition asking the juvenile court to exert dependency jurisdiction over Renesmee on two grounds: (1) mother's "history of substance abuse" and "current abuse[]" of amphetamine and methamphetamine "renders [mother] incapable of providing regular care for the child" and "places [Renesmee] at risk of serious physical harm . . ." (thereby rendering jurisdiction appropriate under section 300, subdivision (b)); and (2) mother's other child (and Renesmee's sibling) "is a current dependent of the Juvenile Court due to . . . mother's substance abuse" (thereby rendering jurisdiction appropriate under section 300, subdivision (j)).[2]

During an interview with the Department on July 31, 2020, and at the detention hearing before the juvenile court on August 7, 2020, mother indicated that she has no known Native American heritage. She also turned in a blank Parental Notification of Indian Status form and the Department reported that ICWA was found inapplicable in the case of Renesmee's sibling. The juvenile court determined at the detention hearing that it has no "reason to know that ICWA applies as to [m]other."[3]

---

[2]  The Department also alleged that dependency jurisdiction was warranted because Renesmee's alleged father, Kenneth M. (father), knew or reasonably should have known of mother's substance abuse and failed to protect Renesmee.

[3]  As for father, he indicated on his Parental Notification of Indian Status form that he may have Native American heritage because his paternal grandmother (that is, Renesmee's paternal great-grandmother) is or was a member of the Cherokee and

3

The next month, mother informed the Department that she believes she has Native American heritage. She did not know which tribe she may be affiliated with and the two family members who she believed may have more information—namely, her maternal grandmother and great-grandmother (that is, Renesmee's maternal great-grandmother and great-great-grandmother)—are both deceased. The Department requested that the juvenile court make an order as to whether notices under ICWA would be appropriate as to mother's heritage.

The juvenile court did not make any further express ICWA findings. On October 27, 2020, the court sustained amended allegations of jurisdiction, and on November 4, 2020, the court bypassed reunification services for mother because reunification services were terminated in the case of Renesmee's sibling (§ 361.5, subd. (b)(10)) and set a hearing for February 10, 2021, to select a permanent plan for Renesmee (§ 366.26).

---

Blackfoot or Blackfeet tribes. The juvenile court ordered the Department to investigate father's claim. The Department followed up with father, but he had not spoken to his grandmother and then he failed to return the Department's call. Father's claim does not affect our analysis of mother's petition because (1) as an alleged father of Renesmee, ICWA's special protections are not triggered (25 U.S.C. § 1903(9) [requiring biological parentage]; *In re E.G.* (2009) 170 Cal.App.4th 1530, 1533 ["an alleged father's claims of Indian heritage" do not trigger ICWA's protections because "absent a biological connection, [a] child cannot claim Indian heritage through [such a] father"]); (2) if he was determined Renesmee's biological father, the juvenile court previously found, after inquiry and tribal notification, that ICWA was inapplicable in the case of father's other child (that is, Renesmee's sibling); and (3) mother does not challenge any ICWA findings as to father.

4

Mother filed this timely petition from the order setting the permanency planning hearing, and we issued a stay of that hearing pending disposition of mother's petition.

**DISCUSSION**

Mother's sole challenge to the order setting the permanency planning hearing is that the Department and juvenile court violated ICWA. We review a court's ICWA findings for substantial evidence. (*In re Austin J.* (2020) 47 Cal.App.5th 870, 885 (*Austin J.*); *In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1467 (*Hunter W.*).)

ICWA was enacted to curtail "the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement." (*Miss. Band of Choctaw Indians v. Holyfield* (1989) 490 U.S. 30, 32.) Under the ICWA and California statutes our Legislature enacted to implement it (§§ 224-224.6), as recently amended, a juvenile court—and, as its delegate, the Department—have duties all aimed at assessing whether a child in a pending dependency case is an "Indian child" entitled to the special protections of ICWA. (§§ 224.2, 224.3; Stats. 2018, ch. 833 (Assem. Bill No. 3176); *In re A.M.* (2020) 47 Cal.App.5th 303, 320 [applying ICWA law in effect at time of order appealed from].) For these purposes, an "'Indian child'" is a child who (1) is "a member of an Indian tribe," or (2) "is eligible for membership in an Indian tribe *and* is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4), italics added; § 224.1, subd. (a) [adopting federal law definition].) By its terms, this definition turns "'on the child's political affiliation with a federally recognized Indian Tribe,'" not "necessarily" "the child's race, ancestry or 'blood quantum.'" (*Austin J.*, *supra*, 47

5

Cal.App.5th at p. 882, quoting 81 Fed. Reg. 38801-38802 (June 14, 2016).)

Under ICWA as amended, the Department and juvenile court have "three distinct duties." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*D.S.*) [noting amendment's creation of three duties]; *Austin J.*, *supra*, 47 Cal.App.5th at pp. 883-884 [same].) The first duty is the initial "duty" of the Department and the juvenile court "to inquire whether [a] child is an Indian child." (§ 224.2, subds. (a) & (b).) The Department discharges this duty chiefly by "asking" family members "whether the child is, or may be, an Indian child." (*Id.*, subd. (b).) For its part, the juvenile court is required, "[a]t the first appearance" in a dependency case, to "ask each participant" "present" "whether the participant knows or has reason to know the child is an Indian child." (*Id.*, subd. (c).) The second duty is the duty of the Department or the juvenile court to "make further inquiry regarding the possible Indian status of the child." (*Id.*, subd. (e).) This duty is triggered if the Department or court "has reason to believe that an Indian child is involved" (*ibid*), and, once triggered, obligates the Department to conduct further interviews to gather information, to contact the Bureau of Indian Affairs and state Department of Social Services for assistance, and/or to contact relevant Indian tribe(s). (*Id.*, subd. (e)(2).) The third duty is the duty to notify the relevant Indian tribe(s). (§ 224.3, subd. (a); 25 U.S.C. § 1912(a).) This duty is triggered if the Department or the court "knows or has reason to know . . . that an Indian child is involved." (§ 224.3, subd. (a).) The Department or juvenile court has "reason to know a child involved in a proceeding is an Indian child" in one of six statutorily defined circumstances—namely, when (1) "[a] person

6

having an interest in the child . . . informs the court that the child is an Indian child" (§ 224.2, subd. (d)(1)), (2) "[a]ny participant in the proceeding . . . informs the court that it has discovered information indicating that the child is an Indian child" (*id.*, subd. (d)(3)), (3) "[t]he child . . . gives the court reason to know that the child is an Indian child" (*id.*, subd. (d)(4)), (4) the child or the parents reside, or are domiciled, "on a reservation or in an Alaskan Native village" (*id.*, subd. (d)(2)), (5) "the child is or has been a ward of a tribal court" (*id.*, subd. (d)(5)), or (6) "either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe" (*id.*, subd. (d)(6)).[4]

Mother is effectively arguing that the Department and juvenile court did not properly discharge the second and third ICWA duties—that is, the duty to conduct further inquiry and the duty to notify the Indian tribes. By statute, however, those duties apply only if there is a "reason to believe" (as to the duty of further inquiry) or a "reason to know" (as to the duty to notify) that the child at issue is an Indian child. (§§ 224.2, subd. (e), 224.3, subd. (a).) We conclude that substantial evidence supports

---

[4]     In amendments which post-date the express ICWA finding made by the juvenile court at the detention hearing in this case, our Legislature clarified that the Department or juvenile court "has reason to believe that an Indian child is involved" for purposes of the duty of further inquiry if the Department or court "has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe," including information "indicat[ing]" but not "establish[ing]" the existence of any of the above-enumerated six circumstances. (§ 224.2, subd. (e)(1); Stats. 2020, ch. 104, § 15, eff. Sept. 18, 2020.)

a finding that there is no reason to believe or reason to know that Renesmee is an Indian child, and we do so for two reasons.

First, when the juvenile court made an express finding at the detention hearing that ICWA did not apply, mother had informed the Department and the court that Renesmee was *not* an Indian child. What is more, it was previously determined that Renesmee's full sibling was not an Indian child. Based on this information, the Department and the court had no "reason to believe an Indian child was involved" and, therefore, the duty of further inquiry and, by extension, the duty to notify were not triggered.

Second, mother's later representation to the Department that she may have Native American heritage did not trigger any duty of further inquiry or duty to notify. To be sure, these are "continuing" duties and, though silent on the issue of ICWA's applicability, the juvenile court's order setting a permanency planning hearing necessarily subsumed its earlier express determination that ICWA does not apply. (§ 224.2, subd. (a); *In re Isaiah W.* (2016) 1 Cal.5th 1, 15; see also *In re Asia L.* (2003) 107 Cal.App.4th 498, 506 [express ICWA finding not required]; *In re Levi U.* (2000) 78 Cal.App.4th 191, 199 (*Levi U.*) [same], superseded on other ground by statute as stated in *In re B.E.* (2020) 46 Cal.App.5th 932, 940.)

However, the information mother provided to the Department did not trigger those continuing duties for two reasons.

To begin, mother's statement that she may have Native American "ancestry" or "heritage" was insufficient by itself to trigger further investigation. "Indian ancestry, without more, does not provide a reason to believe"—and thus does not provide

8

a "'reason to know'"—"that a child is a member of a tribe or is the biological child of a member." (*Austin J.*, *supra*, 47 Cal.App.5th at pp. 888-889; but see *In re T.G.* (2020) 58 Cal.App.5th 275, 294 (*In re T.G.*) [bare statement of Indian ancestry can sometimes trigger a duty to inquire further].) Here, there was nothing more.

Further, even if mother's claim of possible Indian heritage *did* trigger a duty to investigate, the Department discharged that duty. ICWA does not obligate the Department or court "to cast about" for investigate leads. (*Levi U.*, *supra*, 78 Cal.App.4th at p. 199.) As a result, the Department and the court satisfied their duties here where mother "fail[ed] to provide any information requiring followup" (*In re S.B.* (2005) 130 Cal.App.4th 1148, 1161; *In re C.Y.* (2012) 208 Cal.App.4th 34, 42) and the only persons mother identified as having additional information were deceased (*In re J.D.* (2010) 189 Cal.App.4th 118, 123). (See also *Hunter W.*, *supra*, 200 Cal.App.4th at p. 1468 [parent's inability to identify tribe and failure to provide contact information to substantiate unsupported belief insufficient to trigger ICWA duty of further inquiry; family lore alone insufficient].) Only when there is a viable lead does the Department have "the obligation to make a meaningful effort to locate and interview extended family members to obtain whatever information they may have as to the child's possible Indian status." (*In re K.R.* (2018) 20 Cal.App.5th 701, 709; cf. *In re T.G.*, *supra*, 58 Cal.App.5th at p. 292 [mother's identification of specific tribe on ICWA form and at detention hearing "unquestionably provided reason to believe Indian children might be involved"].) There was no viable lead in this case and, therefore, the Department's duty to conduct further inquiry and to notify were not triggered. (See *D.S.*, *supra*, 46 Cal.App.5th at p. 1050 ["The juvenile court may . . . make a

9

finding that ICWA does *not* apply because the agency's further inquiry and due diligence was 'proper and adequate' but no 'reason to know' whether the child is an Indian child was discovered"].)

## DISPOSITION

Mother's petition for extraordinary relief is denied. This opinion shall become final immediately upon filing. (Cal. Rules of Court, rule 8.490(b)(2)(A).) The stay of the February 10, 2021 hearing set pursuant to section 366.26 is hereby dissolved.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT

We concur:


_____, Acting P.J.
ASHMANN-GERST


_____, J.
CHAVEZ